UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| **KRISTINA BRAY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No.: 2:20-cv-02787-JTF** |
| | ) | **JURY DEMANDED** |
| **COX MEDIA GROUP (WHBQ-TV)** | ) | |
| **a/k/a/ COX MEDIA GROUP** | ) | |
| **NORTHEAST, LLC d/b/a WHBQ-TV,** | ) | |
| **WHBQ TELEVISION *and*** | ) | |
| **WHBQ (Memphis), LLC** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**AMENDED COMPLAINT**

Plaintiff KRISTINA BRAY ("Plaintiff" or "BRAY"), by and through counsel of record,

pursuant to Fed. R. Civ. P. 15(a)(1)(B) and (a)(2), respectively, files her *Amended Complaint*

herein against Defendant within 21 days of Defendant's *Answer* (ECF No. 14). The sole purpose

of amending the original Complaint (ECF No. 1) is to correct an alleged misnomer regarding the

correct name of Defendant as identified in Defendant's *Answer* (ECF No. 14), namely that its

name is WHBQ (Memphis), LLC and not COX MEDIA GROUP (d/b/a WHBQ-TV) as stated

by Plaintiff. However, Defendant identified itself as COX MEDIA GROUP in its representations

to the Equal Employment Opportunity Commission ("EEOC") during its investigation of the

underlying facts related to this lawsuit. Further, *earning statements* provided to Plaintiff by

Defendant during the relevant time of her employment identify Defendant as WHBQ

TELEVISION. The Tennessee Secretary of State also only identifies one entity using the name

1

"WHBQ", which is WHBQ-TV operating under the recorded name of COX MEDIA GROUP NORTHEAST, LLC.[1] There is no record of "WHBQ (Memphis), LLC" with the Tennessee Secretary of State as of the date of this Amended Complaint. As a result of the aforementioned facts, and out of an abundance of caution, Plaintiff files her Amended Complaint herein to formally include the name provided by Defendant in this matter, namely "WHBQ (Memphis), LLC." However, Plaintiff also retains those previously used aliases and names identified above herein and in her original Complaint. (ECF No. 1).

Regardless of the name(s) identified by Defendant as its correct legal name, whether to Plaintiff during her employment; to the EEOC; the Tennessee Secretary of State; or in its *Answer* (ECF No. 14), Plaintiff has validly and correctly served Defendant through its only registered agent for service of process in this lawsuit, namely "CORPORATION SERVICE COMPANY at 2908 POSTON AVE., NASHVILLE, TN 37203-1312"; Defendant admits it is the former employer of Plaintiff against which her legal claims are directed; and, its *Answer* (ECF No. 14) raised no affirmative defense or claim to support alleged failure to effect proper and valid service of process.

For the convenience of Defendant, Plaintiff confirms all numbered paragraphs herein below in her *Amended Complaint* are identical to those stated in her original Complaint (ECF No. 1). Therefore, KRISTINA BRAY ("Plaintiff"), by and through undersigned counsel, files this *Amended Complaint* against COX MEDIA GROUP (WHBQ-TV) a/k/a COX MEDIA GROUP NORTHEAST, LLC d/b/a WHBQ-TV, WHBQ TELEVISION, and WHBQ (Memphis), LLC (herein named "Defendant") and alleges as follows:

---

[1] *See* **Exhibit 1**

## I.  INTRODUCTION

1.      This is a civil action to make the Plaintiff whole for Defendant's unlawful discrimination against her because of her race, and unlawful retaliation against Plaintiff because of her legally protected activities, including internal complaint(s) about racial mistreatment and harassment of a co-worker suffering a known disability, resulting in an unwarranted investigation and suspension without pay, and, subsequent termination because of her  complaint filed with the Equal Employment Opportunity Commission ("EEOC") against Defendant on December 31, 2019, all actions in violation of Title VII of the Civil Rights Act of 1964, Equal Employment Opportunities Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Additionally, this is a civil action to make whole the Plaintiff because of unlawful retaliation against her for her exercise of protected activities, specifically her assertion of legal rights, including requests for a reasonable accommodation and complaints of unlawful harassment, on behalf of her disabled co-worker pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADAAA").

## II.  PARTIES

2.      Plaintiff, at all times relevant to this Complaint, resided in Memphis, Shelby County, Tennessee.

3.      Defendant is a commercial entity, incorporated in the State of Delaware, and with its principal corporate address at 223 Perimeter Center Parkway NE, Atlanta, GA 30346-1301, controlling its facility at 485 South Highland St., Memphis, TN 38111 where Plaintiff was employed. Defendant regularly does business in the Memphis, Tennessee area, and employs approximately 500 persons in said area.

## III.  JURISDICTION AND VENUE

4.      Plaintiff brings this action under 28 U.S.C. § 1331, alleging the original

3

jurisdiction of this Honorable Court over this private suit to enforce federal civil rights and employment law protections.

5.        Venue is proper in the U.S. District Court for the Western District of Tennessee pursuant to 28 U.S.C. § 1391(b)(2), because the unlawful employment practices occurred within Shelby County, Tennessee, where the Plaintiff resides, where Plaintiff formerly worked, where Plaintiff suffered the unlawful employment practices and the resultant damages, and where Plaintiff would be employed by Defendant in the absence of unlawful employment practices.

### IV.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.        Plaintiff has met all procedural requirements for filing this Complaint, including administrative exhaustion required for jurisdiction in this Court.

7.        Plaintiff filed her original and amended charge of discrimination and retaliation with the Equal Employment Opportunity Commission and did so within 300 days of the actions complained. Plaintiff filed her first charge for unlawful retaliation under the ADAAA, and her complaints of Race discrimination under Title VII, respectively; and, for Race discrimination, dated December 31, 2019. Plaintiff amended said charge on February 28, 2020, to include an additional claim of unlawful retaliation under Title VII based on her termination of employment on February 13, 2020. On August 20, 2020, Plaintiff received her right to sue notice from the Equal Employment Opportunity Commission. ***See* Exhibit A, "Right to Sue Letter" against Defendant (Claim No.: 490-202000776).**[2] Accordingly, this lawsuit is timely filed within ninety (90) days of these said right to sue notice.

### V.  STATEMENT OF FACTS

8.        Plaintiff was employed by the Defendant as a Director in April 2013 and was promoted to a *Production Supervisor* by Defendant (by News Manager Patti McGettigan and

---

[2] Attached to original Complaint (ECF No. 1)

Station Manager Paul Briggs) in September 2015. Plaintiff was terminated from her employment by Defendant on February 13, 2020.

9.     Plaintiff's job as a *Production Supervisor* involved directing the newscast, supervising about eight production staff, compiling schedules for staff working hours, hold staff meetings, suggesting disciplinary measures to her manager, and conducting annual employee reviews.

10.     Plaintiff earned an approximate annual base income from Defendant of $53,000 but consistently earned an about $22,000 more in overtime, resulting in a total of about $75,000.

11.     From May 2018 to the date of her termination, Plaintiff reported to Mr. Adell Mooney (Black Male), Manager of News Operations.

12.     Pursuant to the Defendant's internal policies, Mr. Mooney would be involved in any disciplinary action against Plaintiff.

13.     In early 2019, Plaintiff received her 'employee review' for 2018 from Manager Adell Mooney, determining she was "exemplary" in every facet of her job, including workplace conduct.

14.     Adam Henning ("Henning") (White Male) began work at Defendant's Memphis location in about June 2019.

15.     On or about August 20, 2019, Plaintiff made a written internal complaint to Human Resources' Tashana Sims Campbell (Black Female) about mistreatment on the job, a co-worker stealing time, and other issues of unfairness related to Plaintiff's working environment. Plaintiff's internal complaint also referenced harassment suffered by Plaintiff's co-worker Ms. Emily ███ [3] (White Female) because of her known and well-documented disability. Plaintiff also reported Emily's complaints to her manager, Adell Mooney.

---

[3] Plaintiff shall provide the full name in her Initial Disclosures

5

16. From August to the end of her employment, Plaintiff made verbal complaints to her manager Adell Mooney about ongoing racial discrimination and harassment in the workplace.

17. Manager Adell Mooney shared Plaintiff's complaints about racial discrimination and harassment in the workplace with upper management, including but not limited to Adam Henning.

18. In August 2019, Manager Adell Mooney made written complaints to the Defendant's Human Resources ("HR") about ongoing racial discrimination and racial favoritism in the workplace caused by Henning. Specifically, Mooney pointed out that Henning was causing a racial divide in the workplace. Mooney pointed out that Henning refused to allow Plaintiff to shadow Mooney while he performed his work duties as a means of providing her training and experience. Meanwhile, Henning permitted White employees to shadow their superiors as a means of gaining training and experience. Additionally, Mooney complained of the August 2019 racially discriminatory promotion of three employees – all of them White.

19. In September 2019, Mooney submitted a second written complaint to HR, detailing his concerns of racial discrimination and harassment in the workplace, including treatment of himself and of Plaintiff. Included in this written complaint was Mooney's protest at Henning and Managing Editor Kevin Wuzzardo's (White Male) ("Wuzzardo") behavior toward him during a meeting on September 11, 2019. Specifically, Mooney complained that Henning said to himself and Wuzzardo that, 'if someone were to ask him if Mooney was having sex with Plaintiff, he would "be like, yeah - he's doing her"' while nodding his head in a sexually suggestive manner.

20. As a result of Plaintiff's August 2019 complaint on behalf of Emily ███, a

6

representative from Human Resources, Damon Wood, interviewed her and several co-workers in late September 2019. Specifically, Mr. Wood's conversation with Plaintiff related to Plaintiff's complaints of mistreatment and harassment of Emily ███.[4]

21.     On Friday, December 13, 2019, Wuzzardo asked Plaintiff to make sure someone attended to and operated a teleprompter. Plaintiff explained to Wuzzardo that the previous shift was short-staffed and therefore proposed using an available staff member to perform the task. Wuzzardo replied to Plaintiff that he did not care who completed said task as long as it was done.

22.     Pursuant to her job duties, and agreement with Wuzzardo, Plaintiff asked an employee who was currently available, to operate the teleprompter. The task was performed without any problems. Plaintiff's delegation of said task also caused no delay or problems to the selected employee's regular duties.

23.     A short time later, Wuzzardo (between 6.1 and 6.2 feet in height, and weighing above 270lbs) began yelling into the face of Plaintiff (5.6 feet in height). Three or four co-workers observed Wuzzardo's aggressive conduct toward Plaintiff.

24.     There was a working camera facing down on the position where Wuzzardo confronted Plaintiff, as referenced in Paragraphs 22-23, above, and Paragraphs 25-26, below.[5]

---

[4] On February 20, 2020, counsel for Plaintiff submitted to Defendant (c/o Toni Mitchell with Human Resources; Station Manager Michelle Harper; and, News Director Adam Henning) a "Litigation Hold Letter." Specifically, Defendant was asked to preserve Plaintiff's personnel file(s) and all emails received and sent from Plaintiff's work email account between August 1, 2019 and the date of her termination. Defendant was informed that Plaintiff's request "would certainly include" all emails exchanged between Plaintiff and Human Resources.

[5] On February 24, 2020, counsel for Plaintiff submitted to Defendant (c/o Toni Mitchell with Human Resources; Station Manager Michelle Harper; and, News Director Adam Henning) a "Second Litigation Hold Letter –Camera footage for Friday December 13, 2019." Specifically, Defendant was asked to preserve camera footage of the alleged incident that formed the basis for Plaintiff's termination or formed part of its investigation into said incident. Defendant was also asked to preserve camera footage for the same location of the said incident covering December 12, and 14, 2019, respectively. Again, on May 4, 2020, after receiving no response from those employees addressed on behalf of Defendant, a "THIRD Litigation Hold Letter" was mailed and submitted to the EEOC. On May 12, 2020, said letter was emailed to Defendant's counsel recorded with the EEOC. Still with no response, an email titled "4th NOTICE of

7

25. Specifically, Wuzzardo yelled at Plaintiff, "I told you to run the teleprompter!" Wuzzardo loudly and aggressively accused Plaintiff of not following his instructions. He also pointed his finger directly before Plaintiff's face, as well as leaning in toward and over Plaintiff in an aggressive manner.

26. Stunned and embarrassed, Plaintiff felt physically threatened by Wuzzardo during said confrontation. However, in a controlled and professional manner, without raising her voice, Plaintiff informed Wuzzardo that his tone appeared hostile and condescending, and his level of anger was unnecessary. Plaintiff was forced to repeat this statement a couple of times before Wuzzardo finally stopped yelling and abruptly stormed away.

27. As a result of said openly hostile behavior from Wuzzardo, Plaintiff immediately reported the incident that same day in an email, sometime between 6.40 p.m. and 7 p.m., to Human Resources' Toni Mitchell (Black Female).

28. Very upset from Wuzzardo's confrontation, Plaintiff also called her manager Adell Mooney and explained Wuzzardo's inexplicably angry and threatening outburst toward her.

29. The next business day, Monday, December 16, 2019, Plaintiff began her work duties earlier than scheduled until interrupted by Henning. Henning requested she follow him to his office. Upon entering Henning's office, Mitchell began talking via the speakerphone.

30. Neither Henning nor Mitchell asked any questions of Plaintiff. Instead, Mitchell explained to Plaintiff that she was suspended indefinitely, pending an investigation into the "incident" on December 13, 2019, with Wuzzardo.

31. While Mitchell was still talking via telephone speaker, Henning began nodding in

litigation Hold Letter" was sent to Defendant's recorded counsel. On June 16, 2020, Plaintiff received an email response stating, "I can confirm that we received the preservation notice and that we have taken appropriate steps to preserve relevant documents and information."

an animated fashion and smiling at Plaintiff provocatively – simultaneously, he held his hand out for Plaintiff to turn over her employee badge.

32.    Henning escorted Plaintiff to her desk to retrieve her belongings but said nothing further.

33.    On December 16, 2019, at 2.02 p.m., Mitchell emailed Plaintiff: "It's pending the outcome of the investigation.  I will make certain that we get through the process quickly.  I will reaching out very soon on when we can meet." (sic)

34.    Mitchell's email referenced herein paragraph 33 above confirmed Plaintiff was suspended without pay.

35.    No interview of Plaintiff about Wuzzardo's conduct or her email reporting the incident occurred prior to her suspension on December 16, 2019.

36.    Plaintiff was suspended without any specific charge or allegation made against her by Defendant, and simply told by Mitchell that, "we are investigating."

37.    Manager Adell Mooney (Black Male) was not part of the decision to suspend Plaintiff.

38.    Wuzzardo received no discipline or counseling as a result of his behavior on December 13, 2019, toward Plaintiff.

39.    Wuzzardo has received no discipline during his career with Defendant.

40.    Although Wuzzardo's title was Managing Editor, at the time of incident on December 13, 2019, his duties did not include the ability to hire, fire, or discipline Defendant's employees.

41.    On or about December 10, 2019 Wuzzardo was involved in an argument with reporter Winnie Wright (White Female), while both persons were positioned in the middle of the

9

newsroom. Specifically, Wright began yelling at Wuzzardo, her Managing Editor and direct superior. A live newscast was being filmed at the time of this incident and was witnessed by Manager Adell Mooney and Director of Technology Curtis Holt.

42.    Winnie Wright received no discipline or counseling for the event described in Paragraph 41, above. Further, Wuzzzardo made no request to management for Ms. Wright to be disciplined or counseled.

43.    Defendant undertook no investigation into the argument between Wright and Wuzzardo as referenced in Paragraph 41, above.

44.    Additionally, during the summer of 2019, Ferrell Garner (White Male) was under investigation for the alleged harassment of Producer Britney Wolfe (Asian female), both while in the workplace and for stalking her outside of the workplace (e.g. in a supermarket). Henning is Ms. Wolfe's manager. Garner was not suspended while Defendant conducted its alleged investigation into his alleged harassment of Ms. Wolfe.

45.    Under Defendant's *Code of Conduct, September 2019*, "Every employee at Cox Media Group ha[d] a responsibility to know and follow [its] Code of Conduct." Further, the referenced policy explained: "If you have a problem or concern, you should start with your manager." For example, said policy notes an employee can report concerns about: "Discrimination or harassment" or "Workplace violence, threats or bullying" or "Other concerning behavior."

46.    Defendant's *Anti-Harassment Policy*, effective September 2019, states: "This Company prohibits harassment of any employee based on … race … or any other factor protected by law." The policy notes that; "Examples of the type of unwelcome conduct that is prohibited by this policy include, but are not limited to: epithets, slurs, taunts, negative

10

stereotyping, *threats or intimidating acts …*" (emphasis added). The policy asserts: "all complaints will be promptly investigated. If an investigation reveals that harassment, discrimination, or other inappropriate or unprofessional conduct (even if not unlawful) has occurred, then appropriate corrective action may be taken by the Company, which may include discipline up to and including termination of employment, as warranted by the results of the investigation."

47.      On December 19, 2020, Plaintiff met with Toni Mitchell offsite to discuss what Plaintiff assumed to be the incident with Wuzzardo on December 13, 2019, and Wuzzardo's threatening behavior toward her. However, Mitchell told Plaintiff she was not investigating Plaintiff's complaint against Wuzzardo.

48.      During this offsite meeting referenced in Paragraph 47, above, Mitchell told Plaintiff that she would receive Defendant's decision regarding its investigation of *her* conduct on December 13, on or before Monday, December 23, 2020.

49.      On December 20, 2019, at 1:35 a.m., Plaintiff emailed Mitchell to elaborate on her complaints of mistreatment and, recent though ongoing history of unprofessional behavior in the workplace. Plaintiff's email included, but was not limited to, the incident on December 10 between Wuzzardo and Winnie Wright referenced in Paragraph 41, above; a similar incident involving Claire Jones (White Female) which occurred without resulting in any discipline; and her feelings of being targeted since her email complaint to HR in August 2019. Mitchell thanked Plaintiff for her email.

50.      On December 23, at 3.25 p.m., Mitchell replied to Plaintiff's email requesting an update on her employment status, noting, "No I don't have an update, it will likely be later in the week."

51.    On December 30, at 1.06 p.m., Mitchell emailed Plaintiff that, "I wanted to let you know that we are still working through our investigation and don't currently have an update for you, but we should know something no later than early next week."

52.    As a result of her unpaid suspension and belief she had suffered discrimination and retaliation, Plaintiff filed a Charge of Discrimination with the EEOC on December 31, 2019. Said Charge included Plaintiff's claims of discrimination based on her race and unlawful retaliation based on previous protected complaints regarding racial harassment suffered by her and harassment of her disabled co-worker.

53.    While Plaintiff was still present at the EEOC offices, the EEOC investigator Vanessa Williams called Toni Mitchell on her private cell phone and informed her that Plaintiff had filed an EEOC Charge against Defendant. Mitchell gave the EEOC investigator her email contact details and angrily ended the call.

54.    Until her suspension on December 16, 2019, Plaintiff had only received one written warning during her time of employment with Defendant.

55.    The sole written warning received by Plaintiff referenced in Paragraph 54, above, occurred in March 2017 for her alleged use of "cursing."

56.    Incidentally, Claire Jones (White Female) who was cursing aloud for the same reason as Plaintiff received no discipline or counseling from Defendant. As a result, Plaintiff refused to sign the documented discipline.

57.    Further, and solely for context in this matter, a few days after the March 2017 event referenced in Paragraphs 55-56, above, director Chris Ouellette (White Male) was recorded cursing during a newscast. However, this White Male employee did not receive any discipline or counseling from Defendant.

58.     Employees were forbidden from communicating with Plaintiff while she was on suspension, including her manager Adell Mooney.

59.     Nonetheless, Mooney called Plaintiff to find out the basis of her suspension, because he was not informed by Henning or Mitchell.

60.     On January 8, 2020, now without pay since her suspension on December 16, 2019, Plaintiff inquired from Mitchell if she could apply for unemployment benefits because she was not working and without pay. Specifically, Plaintiff stated, "It's been over 3 weeks since this suspension began with no updates on the status of the investigation or the status of my position with the company. That also means, as you know, 3 weeks without pay." Additionally, Plaintiff informed Mitchell, "I am by no means resigning from my position, but is it possible to seek unemployment benefits since I haven't been paid in almost a month? Again, I am not resining my position. Please contact me with an update as soon as possible." (sic)

61.     On January 8, 2020, at 12.58 p.m., Mitchell replied to Plaintiff's email referenced in Paragraph 60, above, "I apologize that this has taken longer than expected, an active employee isn't eligible for unemployment.  I am working very hard to have final resolution by the end of this week, again I apologize for the delay." (sic)

62.     On January 10, 2020, Plaintiff emailed Mitchell, "I'm just curious, what exactly is being investigated that's taken over a months time to complete?" (sic) Mitchell responded that same day, stating, "Unfortunately not and I apologize for the delay I will be in contact with you next week, Wednesday at the latest."

63.     On January 15, 2020, Plaintiff emailed Mitchell as follows,

> Is there a timeline for a decision? And also, can you at least tell me what's being investigated? I was under the impression that my claim against Kevin Wuzzardo which was filed Friday, December 13, 2019, in which I mentioned feeling uncomfortable and threatened, as he yelled and pointed

in my face. It's seems as if that is not the basis of this investigation. I would like and deserve some clarity on this investigation that has had me out of work for over a month and without pay, which has jeopardized my livelihood and safety. This seems to be an act of retaliation and unethical.

64.    On January 16, 2020, Mitchell responded to Plaintiff's email referenced in Paragraph 63, above, claiming, "We are still investigating the incident that happened on Friday, December 13th.  As mentioned before, I will contact you when our investigation is complete."

65.    On January 22, 2020 Plaintiff emailed Mitchell, inquiring, "Do you have an update? If not, what's the timetable of having one?"

66.    On January 23, 2020, Mitchell responded to Plaintiff's email referenced in Paragraph 65, above, stating, "I will give you a call later today – what's the best telephone number to reach you?" Plaintiff replied to Mitchell within 2 hours to confirm her telephone number.

67.    On January 24, 2020, Plaintiff again emailed Mitchell. Specifically, Plaintiff stated, "I know you said yesterday you were calling me later that day. Since I didn't receive a call from you yesterday, When should I be expecting your call? Also, I would really like to know the status/findings of the investigation and my employment status." (sic)

68.    On January 29, 2020, Plaintiff emailed Mitchell as follows,

I was expecting a call from you last week per your email. Is there an update? We are rapidly approaching 2 months of me being out of work with no real information as to why. What is the status/findings of the investigation? Also, am I still employed with the company or not?

69.    On January 30, 2020, Mitchell responded to Plaintiff's email referenced in Paragraphs 67-68, above, stating, "My apologies for the delay, we are continuing to look into this matter, and we will get back to you asap."

70.    On February 5, Mitchell emailed Plaintiff, asking, "Are you available to meet

14

next Thursday, February 13th at 9:00 a.m.?  Let me know."

71.    On February 6, 2020, Plaintiff responded to Mitchell's email as follows: "Yes I can be available. Is it possible to have a manager of my choosing present for this meeting?"

72.    Mitchell replied to Plaintiff's email referenced in Paragraph 71, above, asking "Is there something you are concerned about as to why you would need/want to bring a manager to the meeting?  However, we don't allow employees to bring a manager into a meeting."

73.    On February 13, 2020, Plaintiff met with Mitchell, and News Director Adam Henning (White Male). Neither Adell Mooney nor Station Manager Michelle Harper (Black Female) was present for this meeting.

74.    At the meeting with Mitchell, Henning, and Plaintiff, Henning read from a pre-prepared written statement to inform Plaintiff she would be immediately terminated because of the event on December 13, 2019, "March 17" and "other instances."

75.    Plaintiff's Manager Adell Mooney (Black Male) was not interviewed as part of Defendant's alleged investigation into Plaintiff's alleged conduct during her suspension between December 16, 2019, and February 13, 2020.

76.    Adell Mooney (Black Male) did not approve of the Defendant's decision to terminate Plaintiff.

77.    Adell Mooney (Black Male) was not consulted as part of Defendant's decision to terminate Plaintiff.

78.    Defendant has a zero-tolerance policy regarding use of drugs and alcohol in the workplace.

79.    However, in the Fall of 2019, Adam Henning was aware of a White Female

15

employee (producer)[6] who was under the influence of alcohol and drugs while in the workplace.

80.    Henning did not counsel or discipline the employee for her conduct, as referenced in Paragraphs 78-79, above.

81.    Henning did not investigate the employee for her alleged conduct, as referenced in Paragraphs 78-79, above.

82.    In February 2019, it was announced that Apollo Global Management would acquire Cox Media Group. In June 2019, Apollo Global Management announced it would retain the Cox Media Group name.

83.    The sale of Defendant Cox Media Group to *Apollo Global Management* was completed on December 17, 2019.

84.    At the date of the sale of Defendant to *Apollo Global Management* on December 17, 2019, Adell Mooney, Toni Mitchell, Adam Henning, Wuzzardo, and Michelle Harper remained in the same positions of employment as referenced in this Complaint.

85.    At the time of Plaintiff's termination, Adell Mooney, Toni Mitchell, Adam Henning, Wuzzardo, and Michelle Harper remained in the same positions of employment as referenced herein this Complaint.

86.    Following her termination, Plaintiff filed and obtained unemployment benefits from the *Tennessee Department of Labor and Workforce Development*.

87.    Defendant submitted its response in opposition to Plaintiff's request for unemployment benefits to the *Tennessee Department of Labor and Workforce Development*, as referenced in Paragraph 86, above.

88.    Plaintiff was granted unemployment benefits by the *Tennessee Department of Labor and Workforce Development*.

---

[6] Plaintiff will name said employee in her Initial Disclosures.

16

89.     Defendant did not appeal the decision of the *Tennessee Department of Labor and Workforce Development* referenced in paragraph 88 herein.

90.     Throughout the course of her employment, Plaintiff provided loyal and diligent service to Defendant.

91.     Pursuant to this lawsuit, Plaintiff will establish there were White employees of Defendant (similarly situated co-workers to Plaintiff) based at the same facility where Plaintiff was employed, and under the supervision and control of the same management, namely Manager Harper (Black Female) and Director Henning (White Male) during the last twelve (12) months of Plaintiff's employment, who, while alleged to have committed the same or comparable alleged behavior Plainiff was accused of, suspended and terminated for, and were not investigated or disciplined by Defendant.

92.     Plaintiff will establish she made and was involved in protected legal activities, including complaints in August 2019 about mistreatment and harassment of a disabled co-worker, and the ongoing racial discrimination and harassment practiced by management.

93.     Plaintiff will establish the actual reason for his termination on February 13, 2020, by Defendant was unlawful retaliation because of Plaintiff's good faith belief and reporting to the EEOC of disability discrimination, and retaliation, and, because of management's discriminatory actions and behavior toward her on account of her race.

94.     As a result of Defendant's two-month unpaid suspension of Plaintiff, and its subsequent termination of her, Plaintiff suffered a loss of pay, embarrassment, aggravation, humiliation, garden-variety emotional distress, and damage to her reputation.

95.     Defendant's actions and omissions taken against Plaintiff, as stated above, are violations of Title VII and the ADAAA, and were knowing and intentional, willful, malicious,

and reckless.

96.    Plaintiff has been deprived of employment opportunities and has otherwise been subjected to Defendant's intentional discrimination and retaliation regarding her rights under Title VII and ADAAA, respectively, which has caused Plaintiff to suffer economic losses, including lost wages and benefits, as well as future pecuniary losses, interest, reasonable attorney fees, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of health insurance causing her health problems to continue without treatment, and other nonpecuniary losses and damages in violation of Title VII and the ADAAA, prohibiting discriminatory and retaliatory treatment and termination.

## VI.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### COUNT 1: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000(e)-2 *et seq.*, (Title VII)

*Plaintiff repeats, re-alleges, and incorporates the Paragraphs above as if fully set forth herein.*

97.    Defendant discriminated against Plaintiff on the basis of her race in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-2, *et seq.*, as amended ("Title VII").

98.    Defendant discriminated against Plaintiff because she was a Black Female. Specifically, Plaintiff was subjected to unpaid suspension for alleged poor conduct while White Females and White Males with similar or comparable alleged poor conduct were not investigated or suspended or terminated. Further, Plaintiff was terminated, in whole, or as a motivating factor, because of her race.

99.    Plaintiff was replaced by an unqualified or less qualified White male.

100.    The Defendant's violation of Title VII injured and damaged the Plaintiff.

101.    Defendant intentionally, deliberately, willfully, and callously disregarded the rights of Plaintiff.

102.    By reason of the Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available under 42 U.S.C. § 2000(e), *et seq.*

**SECOND CAUSE OF ACTION**

**COUNT II:  RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (AS AMENDED)
(ADAAA)**

***Plaintiff repeats, re-alleges, and incorporates the Paragraphs above as if fully set forth herein.***

103.    The ADA Amendments Act of 2008 (ADAAA) applies to Plaintiff's ADAAA claim of unlawful retaliation because those actions took place on or after January 1, 2009.  Pub. L. 110–325, § 8, 122 Stat. 3553 (Sep. 25, 2008), codified at, e.g., 42 U.S.C. § 12101 *et seq.*

104.    Defendant(s) conduct as alleged in the numbered Paragraphs above is in violation of Plaintiff's rights under the Americans with Disabilities Act (as amended), 42 U.S.C. § 12101 *et seq.* Specifically, said violation(s) occurred as a result of Defendant's harassment and suspension of Plaintiff following her complaint(s) of harassment, and request(s) for lawful accommodation(s), on behalf of her disabled co-worker pursuant to the ADAAA.

105.    At all relevant times, Plaintiff believed in good faith her co-worker was a "qualified employee" pursuant to 42 U.S.C. § 12111(8) of the ADAAA.

106.    At all relevant times, Defendant was a "covered" employer pursuant to 42 U.S.C. § 12111(5)(A) of the ADAAA.

107.    Plaintiff's referenced co-worker was regarded and known by Defendant to have an actual, and recorded, psychological impairment that was long-term or permanent in nature and that substantially limits said co-worker in several major life activities, including but not limited

to her ability to focus her attention, concentrate, sleep, and communicate, as compared to an average member of the general population.

## THIRD CAUSE OF ACTION

### COUNT III:  RETALIATION IN VIOLATION OF 42 U.S.C. § 2000(e)-2 *et seq*., TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (Title VII)

*Plaintiff repeats, re-alleges, and incorporates the Paragraphs above as if fully set forth herein.*

108.    The Defendant retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)3 *et seq*.("Title VII").

109.    Defendant retaliated against Plaintiff because she made complaints to Defendant about harassment and discrimination based on her race and the race of co-workers, thereby constituting protected activity. Subsequently, Defendant retaliated against Plaintiff by subjecting her to unlawful conduct, namely her suspension on December 16, 2019, as described herein the Paragraphs of this Complaint, which adversely affected Plaintiff by resulting in her unpaid suspension from employment.

110.    The Defendant's violation of Title VII injured and damaged the Plaintiff.

111.    The Defendant has intentionally, deliberately, willfully, and callously disregarded the lawful rights of Plaintiff.

112.    By reason of the Defendant's acts of discrimination and retaliation, Plaintiff is entitled to all legal and equitable remedies available under 42 U.S.C. § 2000(e) *et seq*.

## FOURTH CAUSE OF ACTION

### COUNT IV:  RETALIATION IN VIOLATION OF 42 U.S.C. § 2000(e)-2 *et seq*., TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (Title VII)

*Plaintiff repeats, re-alleges, and incorporates the Paragraphs above as if fully set forth herein.*

20

113.     The Defendant retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)3 *et seq.*("Title VII").

114.     The Defendant retaliated against Plaintiff because she availed herself of the process made available by the EEOC, made a related Charge against Defendant, and for participating in the subsequent EEOC investigation against Defendant thereby constituting protected activity. Specifically, Defendant retaliated against Plaintiff by subjecting her to unlawful conduct described herein the paragraphs of this Complaint, which adversely affected Plaintiff by resulting in her termination of employment.

115.     The Defendant's violation of Title VII injured and damaged the Plaintiff.

116.     The Defendant has intentionally, deliberately, willfully, and callously disregarded the lawful rights of Plaintiff.

117.     By reason of the Defendant's acts of discrimination and retaliation, Plaintiff is entitled to all legal and equitable remedies available under 42 U.S.C. § 2000(e) *et seq.*

## VII.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff KRISTINA BRAY respectfully prays that this Honorable Court:

A.     Declare and adjudge that the Defendant(s) has violated Plaintiff s rights under 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 12101 *et seq;*

B.     Order Defendant(s) to return Plaintiff to her former position of employment with Defendant(s);

C.     Order Defendant(s) to immediately cease and desist from all retaliatory behavior as described in this complaint;

D.     Award Plaintiff nominal damages;

E.     Award Plaintiff non-economic compensatory damages, including garden variety

21

emotional pain and suffering, including the foregoing of necessary medical treatments for an ongoing medical condition that produces severe migraines;

F.    Award Plaintiff punitive damages;

G.    Award Plaintiff compensatory damages, including appropriate back-pay, based on an annual salary of between $53,000.00 and $75,000.00, plus benefits, and including but not limited to, unpaid social security quarters, unpaid entitlements, bonuses, and contributions to his retirement account(s);

H.    Award an amount to offset additional tax liability incurred by Plaintiff for any award of back-pay which she would not have incurred had she received pay and benefits from Defendant in the regular course of employment;

I.    Award all out-of-pocket expenses and debts incurred by Plaintiff, including liquidating her company pension resulting in penalties and lost value, costs to cover the use of credit card usage to meet reasonable daily living expenses, and acquired medical debts because of lost health insurance formerly provided by his employment;

J.    Award Plaintiff the costs of this action and reasonable attorney fees;

K.    Award Plaintiff pre-judgment and post-judgment interest on the foregoing sums; and,

L.    Award Plaintiff other relief as the Court deems just and proper.

## VII. TRIAL BY JURY

Plaintiff respectfully demands a trial by jury on all issues.

**Dated:** January 1, 2021

**Respectfully submitted,**

s/ Steve Wilson (TN BPR #28460)
Steve Wilson, The Steve Wilson Firm
5100 Poplar Ave., Ste. 2700
Memphis, TN 38137
Main: (901) 337-1300
Fax: (901) 372-1446
steve@stevewilsonfirm.com


s/ Matt Gulotta (TN BPR #28194)
Matt Gulotta, Attorney at Law
Main: (901) 213-6648
Fax: (901) 424-1296
matt@gulottalaw.net

*Attorneys for Plaintiff*


## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was forwarded by electronic means via the Court's electronic filing system to all parties of record; and e-mail to counsel for Defendant listed below.

Ms. Christina F. Meddin
*Attorney for Defendant*
SEYFARTH SHAW, LLP
1075 Peachtree St. NE, Ste. 2500
Atlanta, GA 30309-3958
T.: 404-885-1500
F.: 404-892-7056
E.: cmeddin@seyfarth.com


s/ Steve Wilson